UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE HUDSON,

    Plaintiff,                                      Case No. 12-cv-13026

v.                                               HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION** (document no. 15), **GRANTING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (document no. 14), **DENYING HUDSON'S MOTION FOR SUMMARY JUDGMENT** (document no. 11), **AND DISMISSING CASE**

The Social Security Administration ("SSA") denied Plaintiff and claimant Valerie Hudson's application for Supplemental Security Income in a decision issued by Administrative Law Judge ("ALJ") Ethel Revels on October 28, 2010. After the SSA Appeals Council declined to review the decision, Hudson appealed to this Court. The Court referred the matter to a U.S. Magistrate Judge, and the parties filed cross motions for summary judgment. On June 18, 2013, the magistrate judge issued a Report and Recommendation ("Report") suggesting denial of Hudson's motion and granting of the Commissioner for Social Security's ("Commissioner") motion. Report, ECF No. 15.

Hudson filed two timely objections to the Report. She first argues the Report improperly concluded the ALJ's determination that Hudson's human immunodeficiency virus ("HIV") infection was "not severe" or harmless error; and second argues that the Report erred by concluding that the ALJ's assessment of Hudson's credibility was supported by substantial evidence. Objection at 2-3, ECF No. 16.

Civil Rule 72 does not require the Court to hold a hearing when reviewing a

magistrate judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering Hudson's objections de novo, the Court concludes that her objections do not have merit. Accordingly, the Court will adopt the Report, grant the Commissioner's motion for summary judgment, deny Hudson's motion for summary judgment, and dismiss the case.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Hudson objected to two findings made by the Report as to the ALJ's decision. Those findings will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's

finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Valerie Hudson was forty-seven years old on the date she filed for benefits, with a General Education Degree but no relevant work experience. ALJ Decision at 9. For several years, she had suffered from a herniated disc, an HIV infection, and various mental disorders stemming in part from these conditions. These conditions started to interfere with her ability to work as early as 1988, and she stated she was unable to work at all by August, 2007. Report at 2. Hudson lives in an apartment with her son, and as a general routine will read magazines, watch television, speak with her daughter on the telephone, and read; she will occasionally go to the store, the doctor, or for other "important business." *Id.* at 3. She first began receiving treatment for HIV in October of 2001. All subsequent treatments showed the HIV infection to be asymptomatic, *see* Report at 5-6, 6 n.3, and that she did not require anti-retroviral therapy. *Id.* In September of 2004 she was diagnosed with allergies triggered by, among other things, perfume and dust, and was referred to an allergist. Hudson filed an application for supplemental security income benefits on January 14, 2008. After her initial application, Hudson was admitted to the emergency room and was diagnosed with Bell's palsy and t-cell deficiency, although a CT scan of her was normal. *Id.* at 7. Hudson subsequently underwent several examinations by medical doctors pursuant to her claim. On June 29, 2010, ALJ Revels held a hearing with Hudson in Detroit,

Michigan; a Vocational Expert also appeared at the hearing. On October 28, 2010, the ALJ concluded Hudson was not disabled and denied her claim. The Social Security Appeals Council declined to review her decision, and Hudson filed suit in this Court.

I.      The ALJ's Decision

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found Hudson had not engaged in any substantial gainful activity since January 8, 2008, the application date. ALJ Decision at 3.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found Hudson suffered from severe impairments of obesity, a herniated disc, allergies, depression, and anxiety. The ALJ also found Hudson suffered from a non-severe impairment of human immunodeficiency virus ("HIV"), which she determined was "asymptomatic and causes no more than minimal functional limitations." ALJ Decision at 3.

Third, the ALJ must determine whether the claimant can prove the impairment "meets

or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found Hudson did not have an impairment or a combination of impairments that met or equaled one of the listings found in Appendix 1, section 1.04, disorders of the spine; 14.08, HIV infection; or 12.04 and 12.06, affective and anxiety disorders.

To meet or equal a 1.04 listing, a claimant must suffer from a disorder of the spine, resulting in the compromise of a nerve root or the spinal cord; and the claimant must display

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04. Although the ALJ acknowledged that Hudson had a back disorder of a herniated disc, she concluded that the medical evidence did not support Hudson meeting or equaling any of the three listed impairment types. ALJ Decision at 4.

To meet or equal a 14.08 listing, a claimant must suffer from HIV, and demonstrate

one of a number of symptoms and limitations, including a bacterial or viral infection, malignant neoplasms, cognitive or motor dysfunction, wasting syndrome, or the infection plus a series of limitations in activities of daily functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.08. Although the ALJ determined Hudson had HIV, she concluded it was asymptomatic and that Hudson did not suffer from any of the limitations or symptoms required for her to meet or equal the 14.08 listing. ALJ Decision at 4.

To meet or equal a 12.04 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ implicitly determined Hudson met paragraph A criteria, the ALJ also concluded she did not meet the criteria of Paragraph B, which requires showing at least two of the following symptoms:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, ¶ B. The ALJ found that Hudson only had moderate restriction in daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration; and no documented episodes of decompensation. ALJ Decision at 4.

Listing 12.04 may also be met if the claimant alternatively meets "paragraph C" critieria. The ALJ found that Hudson did not meet the criteria of paragraph C, which requires a finding of:

   C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

      1. Repeated episodes of decompensation, each of extended duration; or

6

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04, ¶ C. Here, the ALJ found the medical record did not establish a chronic affective disorder of at least two years that caused more than a minimal limitation of her ability to do basic work activities; or in combination with the remaining three factors. ALJ Decision at 5.

To meet or equal a 12.06 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria, or meet "paragraph A" and "paragraph C" criteria. Although the ALJ implicitly determined Hudson met paragraph A criteria, the ALJ also concluded she did not meet the criteria of Paragraph B, which requires the same showing to meet Paragraph B of a 12.04 listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06, ¶ B. Again, the ALJ found that Hudson only had moderate restriction in daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration; and no documented episodes of decompensation. ALJ Decision at 4.

Listing 12.06 may also be met if the claimant alternatively meets "paragraph C" criteria. The ALJ found that Hudson did not meet the standard, which requires a finding of:

> Resulting in complete inability to function independently outside the area of one's home.

§ 12.06, ¶ C. Here, the ALJ found the medical record did not establish that Hudson had a complete inability to function independently outside of her home. ALJ Decision at 5.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ

7

will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show she cannot engage in work she has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded Hudson had the residual function capacity to perform "light work" as defined by 20 C.F.R. § 416.967, although with the restrictions that the work must include a "stand/sit at will option;" simple repetitive tasks; take place in a relatively clean air environment without temperature extremes or wet and humid areas; no more than occasional climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; only occasional stooping, kneeling, or crouching; and no operating at "production pace." ALJ Decision at 5. In making this determination, the ALJ considered a wide variety of evidentiary sources, including Hudson's own testimony, a New Center Community Mental Health Services evaluation, the opinion of treating Dr. Hazem Eltahawy, a Detroit Receiving Hospital evaluation, the treatment of several doctors from the University Physicians Group, a State agency consultive exam, a psychological evaluation with Danette Conklin, and others. *Id.* at 5-8.

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ found that Hudson had no past relevant work. Considering Hudson's residual function capacity, the

Vocational Expert testified that Hudson would be able to perform jobs such as an office clerk, with 4100 jobs in the Michigan economy, and receptionist / information clerk, with 1800 jobs in the Michigan economy. ALJ Decision at 10. The ALJ then concluded that Hudson was "not disabled" as defined by the Social Security Act. *Id.*

The Report recommended granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Report at 23. Pursuant to 28 U.S.C. § 636(b)(1), Hudson filed an objection to the report on June 18, 2013.

## DISCUSSION

I. <u>Whether HIV is a Severe Impairment</u>

In her decision, the ALJ concluded that although Hudson suffered from HIV, it was a non-severe impairment because she was asymptomatic. ALJ Decision at 3. Responding to Hudson's challenge of this decision, the Report concluded that the ALJ had substantial evidence to support her finding the HIV infection to be non-severe; and that even if the ALJ did err, the error was harmless because the ALJ still incorporated the limitation and impairment into Hudson's ultimate residual function capacity calculation. Report at 16-17. In her objection, Hudson argues the Report first erred factually by concluding there was substantial evidence to support the ALJ's finding the HIV infection was non-severe; and second erred by overlooking the fact the ALJ did not properly incorporate Hudson's HIV into the third step of the five-step process. Objection at 2.

A. <u>Legal Standard</u>

A reviewing court only examines an ALJ's decision to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers,* 486 F.3d at 241. A court should not replace an ALJ's judgment of the facts with its own view of the

evidence unless an ALJ's finding is completely without support. *See Brainard*, 889 F.2d at 679 ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence.").

B. <u>Analysis</u>

The Court first concludes there was substantial evidence to support the ALJ's decision to call Hudson's HIV a non-severe impairment. The Administrative Record ("A.R.") shows that Hudson's HIV was continually and repeatedly diagnosed as asymptomatic over the course of several years. The treatment records over the course of several years — which the ALJ discussed in her decision, *see* ALJ Report at 7 (citing Exhibits C5F, C11F, C20F, C24F) — all reveal Hudson to be asymptomatic, to have never had anti-retroviral treatment, and to have maintained a white blood cell count sufficient to avoid therapy. The Report also points out that the assertion that Hudson suffers pain in the form of muscle aches and infections related to her HIV arises in her motion for summary judgment. *See* Mot. for Summ. J. at 8, ECF No. 11. And in her testimony to the ALJ, Hudson stated her depression and allergies, not her HIV, were affecting her ability to work. A.R. at 56-57. This is substantial evidence to support the ALJ's conclusion that Hudson's HIV infection was non-severe.

As to Hudson's objection the ALJ did not properly apply the five-step claim, this is also unavailing. The ALJ did consider — in fact, gave "particular" consideration to — Hudson's diagnosis of HIV when examining whether she met or equaled a listed impairment in Appendix 1.[1] The ALJ concluded that the medical evidence did not support a listing under

---

[1] The Court also would find the error to term HIV "severe" harmless; because the ALJ already found Hudson suffered from severe conditions, namely obesity, a herniated disc, allergies, depression, and anxiety, the ALJ was required to consider HIV, severe or not, in

10

14.08. ALJ Report at 4. Contrary to what Hudson argues, the ALJ did not simply "ignore" her HIV diagnosis at step three; the ALJ merely concluded that the evidence did not support Hudson meeting or equaling 14.08's conditions, such as major bacterial or viral infections, encephalopathy, wasting syndrome, or serious symptoms in combination with marked limitations of daily living or social functioning. Particularly as to the last conditions, the ALJ did explain that Hudson only had mild or moderate limitations in daily living when discussing how these conditions applied as well to the 12.04 and 12.06 claimed limitations. ALJ Report at 7. Hudson is correct in her objection that there is no shift of burden at the third step; the burden of proof remains on the *claimant. See Wilson*, 378 F.3d at 548 ("claimant bears the burden of proof during the first four steps"). Hudson has put forth no evidence to show why the ALJ was wrong at this stage, or why she met any part of the 14.08 listing conditions. The ALJ had substantial evidence to declare HIV non-severe, and nevertheless considered the HIV infection at step three; the Court will accordingly overrule the objections and adopt this part of the Report.

II.     Whether the ALJ's Credibility Assessment was Proper

Hudson also argues the Report wrongly concluded the ALJ had properly discredited Hudson's testimony at the hearing. Hudson points out that while an ALJ may, of course, choose to discredit testimony, the ALJ must also consider several other factors when deciding what weight to give testimony. Hudson argues the ALJ did not do so.

A. Legal Standard

Title 20 C.F.R. § 404.1529 specifies how an ALJ will evaluate the severity and

---

the remaining steps. *See Anthony v. Astrue*, 266 F.App'x 451, 457 (6th Cir. 2008). The ALJ did so consider the HIV in the remaining steps.

11

persistence of symptoms such as pain, and section (c)(3) specifies the procedure for considering "other information," including the testimony of the claimant. This section generally requires consideration of the correlation between testimony and the objective medical evidence, but also will involve a determination of the credibility of the claimant's testimony as to her symptoms. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003) ("An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability"). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers,* 486 F.3d at 247. The ALJ's assessment of a claimant's credibility "are to be given great weight." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007). But like other conclusions, the ALJ's assessment of credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

    B. <u>Analysis</u>

Contrary to the plaintiff's assertion, the ALJ had substantial evidence as to why Hudson's testimony was not credible, and also explained these reasons in her opinion. It is true that the ALJ included what Hudson's motion for summary judgment attempted to term as "boilerplate" findings when she stated that Hudson's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." ALJ Decision at 9. But, in the very same paragraph, the ALJ specifically noted she felt Hudson was being evasive regarding "recent doctor's visits and the transportation she used." *Id.* The ALJ also catalogued several contradictions between Hudson's allegations and testimony, and the record evidence and other parts of Hudson's testimony, such as the

discrepancy between Hudson's claims of isolation and her reports of previously attending spiritual meetings and having good relations with her immediate family and friends. *Id.* The inherent inconsistencies and the ALJ's opportunity to "observ[e] a witness's demeanor while testifying," *see Walters*, 127 F.3d at 528, in combination with the other record evidence, is substantial evidence sufficient to support the ALJ's decision to discredit Hudson's testimony. *See generally Jones*, 336 F.3d at 477 (after review of record evidence, "ALJ's explanations for partially discrediting [claimant] are reasonable and supported by substantial evidence in the record").

    Finally, Hudson argues that when discounting her credibility, the ALJ did not consider the additional factors enumerated in § 404.1529(c)(3), such as daily activities, side effects of medication, and the like. Objection at 3. But the distinction is more subtle; although the regulation states the Commissioner must "consider" the factors, Hudson argues that the ALJ did not "discuss" the factors, presumably in the Decision. First, " it is well settled that [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 507-08 (6th Cir. 2006).[2] Here, the Court has already noted how the ALJ discussed issues such as Hudson's living situation and social activities. ALJ Decision at 6, 9. The ALJ also questioned Hudson specifically about side effects for medication. A.R. at 47. The ALJ also discussed some of the pain medication Hudson took, and, although not

---

[2] And in any event, Hudson has not shown that a mere failure to discuss, in the decision, all six factors constitutes reversible error by itself.

13

going through them medication-by-medication, presented substantial record evidence in other parts of the Decision to support her formulation of Hudson's overall residual function capacity. This is substantial evidence to support the ALJ's conclusion that Hudson was not credible. *See, e.g.*, *Guinn v. Comm'r of Soc. Sec.*, 555 F. Supp. 2d 913, 921 (S.D. Ohio 2008) (Administrative Record showed ALJ considered the § 1529 factors in both Decision and during hearing). The Court will overrule the objection.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Report and Recommendation (document no. 15) is **ADOPTED** over Hudson's objections.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (document no. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 14) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

                                 s/Stephen J. Murphy, III
                                 STEPHEN J. MURPHY, III
                                 United States District Judge

Dated: September 25, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 25, 2013, by electronic and/or ordinary mail.

                                 s/Carol Cohron
                                 Case Manager